J-S74014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.G.M. | : | |
| Appellant | : | |
| | : | No. 1799 EDA 2019 |

Appeal from the Order Entered June 3, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0007636-2014

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:            **FILED FEBRUARY 14, 2020**

Appellant, J.G.M.,[1] appeals from the post-conviction court's June 3, 2019 order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Herein, Appellant raises one claim of ineffective assistance of counsel.  After careful review, we affirm.

We adopt the PCRA court's detailed summary of the facts and procedural history of this case, set forth in its Pa.R.A.P. 1925(a) opinion.  **See** PCRA Court Opinion (PCO), 7/10/19, at 1-5.  We need only note that Appellant was convicted, following a jury trial, of various sexual offenses committed against his then 12-year-old stepdaughter, O.B.  He was sentenced to an aggregate term of incarceration of 6 to 12 years, and a consecutive term of 2 years'

---

[*] Former Justice specially assigned to the Superior Court.

[1] In order to protect the confidentiality of the victim, we will use initials for Appellant's name.

probation. This Court affirmed his judgment of sentence, and our Supreme Court denied his subsequent petition for allowance of appeal. ***Commonwealth v. J.G.M.***, 168 A.3d 372 (Pa. Super. 2017) (unpublished memorandum), *appeal denied*, 172 A.3d 587 (Pa. 2017).

On October 11, 2018, Appellant filed a timely, *pro se* PCRA petition. Counsel was appointed and filed an amended petition on Appellant's behalf raising, *inter alia*, a claim that his trial counsel acted ineffectively by failing to question Appellant's character witnesses about his reputation for having good morals and a non-violent nature. On February 19, 2019, the PCRA court held a hearing, at which Appellant presented the testimony of two individuals who had testified as character witnesses at trial. Those witnesses confirmed that they would have testified about Appellant's reputation for good morals and non-violence, had they been asked about such traits by defense counsel. Appellant and trial counsel also testified at the hearing. On June 4, 2019, the PCRA court issued an order denying Appellant's petition.

Appellant filed a timely notice of appeal, and he also complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on July 10, 2019. Herein, Appellant states one issue for our review:

> I. Did the [PCRA] court err in denying [Appellant's PCRA] petition as to the effectiveness of trial counsel who failed to properly prepare with character witnesses and to question such witnesses who were called on [Appellant's] behalf. These witnesses were available to specifically testify as to [Appellant's] character and reputation in the community not only for being truthful land law-abiding, but also the personality traits of being non-violent and of

good moral character. The jury was thereby prevented from receiving a full picture of [Appellant's] reputation. Such lack of questioning was the result of unreasonable professional judgment because trial counsel did not know he could ask questions of the character witnesses regarding specific aspects of [Appellant's] reputation. Such evidence, specific to the type of crime that was charged, would have been invaluable to a jury that was faced with a credibility determination[.]

Appellant's Brief at 6 (unnecessary capitalization omitted).

Preliminarily, we observe that,

"[o]n appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." **Commonwealth v. Edmiston**, 65 A.3d 339, 345 (Pa. 2013) (citation omitted). "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." **Commonwealth v. Koehler**, … 36 A.3d 121, 131 ([Pa.] 2012) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court." **Commonwealth v. Spotz**, … 18 A.3d 244, 259 ([Pa.] 2011) (citation omitted). "However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." **Id.**

**Commonwealth v. Medina**, 92 A.3d 1210, 1214–15 (Pa. Super. 2014) (*en banc*).

Here, in assessing Appellant's single ineffectiveness claim, we have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed the thorough opinion of the Honorable Rea B. Boylan of the Court of Common Pleas of Bucks County. We conclude that Judge Boylan's well-reasoned opinion accurately disposes of the issue presented by Appellant. We add only two points relevant to the specific arguments Appellant raises on appeal.

First, while Appellant avers that his trial counsel was ineffective for not asking his **eight** character witnesses about his reputation for non-violence and good moral character, he only presented the testimony of **two** of those character witnesses at the PCRA hearing to confirm that they could have, and would have, offered such reputation testimony at trial. Because Appellant failed to establish what testimony the other six character witnesses would/could have offered about his reputation for the at-issue character traits, we cannot deem counsel ineffective for failing to question them in this vein. *See Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011) ("Where a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant.").

Second, the cases on which Appellant relies to support his ineffectiveness claim are clearly distinguishable because, in those cases, **no** character witnesses were called on the defendant's behalf at trial. *See Commonwealth v. Weiss*, 606 A.2d 439 (Pa. 1992) (concluding that in a sexual abuse case, counsel was ineffective for not calling any character witnesses on the appellant's behalf when counsel knew about those witnesses, and they were willing to testify on the appellant's behalf); *Commonwealth v. Luther*, 463 A.2d 1073 (Pa. Super. 1983) (finding that trial counsel acted ineffectively by not calling character witnesses on the appellant's behalf when

the credibility of the appellant and the victim was a "basic and fundamental issue" in the rape case); ***Commonwealth v. Stefanowicz***, 179 A. 770, 770 (Pa. Super. 1935) (concluding that the trial court erred by precluding the appellant, who was charged with rape, from presenting any character evidence regarding his reputation for "peace and good order in [the] community").

Aside from these points, we conclude that the PCRA court adequately addresses Appellant's ineffectiveness argument, and properly rejects it, in its Rule 1925(a) opinion. Accordingly, we adopt the court's opinion as our own, and affirm the order denying Appellant's petition for the reasons set forth therein.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/14/20

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

      v.

J.G.M.
JAMES McCREESH

     :
     :
     :
     :
     :
     :
     :

**No. CP-09-CR-0007636-2014**

## OPINION

Defendant J.G.M. James McCreesh ("Appellant") appeals this Court's dismissal of his petition pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541, *et seq.,* on June 4, 2019. We file this Opinion in accordance with Pennsylvania Rule of Appellate Procedure 1925(a).

## I.    FACTUAL BACKGROUND

Following a jury trial, Appellant was convicted of Involuntary Deviate Sexual Intercourse with a Child,[1] Aggravated Indecent Assault,[2] Indecent Assault,[3] and Corruption of Minors[4] on October 23, 2015. The following is a summary of the relevant facts, which this Court set forth in its Opinion, filed on August 16, 2016:

> This case involves three instances of Appellant sexually abusing his 12-year-old stepdaughter, Juvenile O.B. ("the victim"). During April and May of 2014, the victim lived with Appellant, her mother, and her younger half-brother. ███████████████████ ████████████████████████████. At that time, the victim was a sixth grader ██ ███████████████. The victim testified that she engaged in few extracurricular activities at school, and she enjoyed playing with various electronic devices, including her cellphone, laptop computer, and video game systems. Appellant was frequently responsible for taking care of the victim and her half-brother while the victim's mother worked the night shift as a nurse.
>
> The victim testified that Appellant sexually abused her three separate times in April and May of 2014. Appellant communicated to the victim that the sexual contact was a punishment for the unpermitted use of her electronic devices.

---

[1] 18 Pa.C.S.A. § 3123(b).
[2] 18 Pa.C.S.A. § 3125(a)(7).
[3] 18 Pa.C.S.A. § 3126(a)(7).
[4] 18 Pa.C.S.A. § 6301(a)(1)(ii).

1

The first incident occurred in April of 2014. The victim's mother was away working the night shift, and the victim was under the supervision of Appellant. The victim testified that Appellant reprimanded her for impermissibly using her electronic devices. As a punishment for using the electronics, Appellant forced the victim to strip off her clothes and masturbate in front of him. In addition to watching the victim strip and masturbate, the victim testified that Appellant also manipulated the victim's hand on her vagina and used his own hand to touch her vagina. The abuse took place in the upstairs master bedroom and lasted approximately 30 to 45 minutes. The victim testified that, after the incident, Appellant told her "don't tell anybody" and "don't tell mom."

The second incident occurred on Mother's Day, May 11, 2014. During the day, there was a family gathering at the victim and Appellant's residence. The victim testified that, while the rest of the family was outside on the patio and she was sitting in the living room watching television, Appellant reprimanded her for watching inappropriate cartoons. As punishment, Appellant told her that she could either "give him a blowjob later that night or [she would] get all [her] stuff taken away." That night, after the victim's mother went to sleep, Appellant summoned the victim to the downstairs guest bedroom, where Appellant sometimes slept because of his sleep apnea. Once inside the guest bedroom, the victim was again forced to strip out of her clothes. This time, however, Appellant took off his clothes as well. Appellant forced the victim to manipulate his penis with her hand and to perform oral sex upon him to the point of ejaculation. In addition, Appellant bit the victim's nipples and touched her vagina. The victim testified that she was ordered to clean up the ejaculate after he ejaculated. She got paper towels from the bathroom and wiped the ejaculate from her hand and from Appellant's penis. In addition, she spit some ejaculate into a paper towel. She then threw the paper towels into the trash can in the guest bedroom.

The third incident occurred in late May of 2014. The victim's mother was again away working the night shift at the hospital. The victim testified that Appellant called her into the family room and reprimanded her for the use of her electronic devices. She was again offered the choice of giving Appellant a "blowjob" or having all of her "stuff" taken away. Appellant called the victim to the upstairs master bedroom that evening. The victim was forced to strip out of her clothes and to perform oral sex on Appellant's penis. In addition, Appellant rubbed his penis against the victim's vagina, without penetration, and performed oral sex on the victim's vagina. The victim again cleaned up the ejaculate with a paper towel and threw out the towel. Appellant told her that he would do "awful things" to her if she told her mother, her friends, or anyone else about what he did to her.

In addition to the three instances of abuse, the victim testified that Appellant would show her pornography on both his iPad and her laptop computer. In addition, the victim, upon request from Appellant, showed Appellant pornographic images of people having sex on her laptop computer.

Following these instances of sexual abuse, the victim became "horrified of [Appellant]." She "felt awful" about what Appellant made her do and was unable to tell her mother what was happening.

2

A few days after the third incident, the victim told her friend, Juvenile J.A., about Appellant sexually abusing her. Afterward, the friend's mother informed Carol Quinlan, a social worker at ████████ School, about the abuse. On May 27, 2014, Quinlan spoke with the victim. She tearfully advised Quinlan that Appellant forced her to perform oral sex and other sexual acts as punishment for her impermissible use of electronic devices. Following the meeting, Quinlan called Childline; Bucks County Children and Youth and the Upper Southampton Police then became involved in the case.

Later that day, the Bucks County Child Advocacy Center held a forensic interview with the victim. Jodi Kaplan, a child forensic interview specialist, conducted the interview, which was recorded. Kaplan testified that the interview format was non-leading in nature and based on nationally recognized methods of forensically interviewing children. At the interview, the victim again revealed that Appellant sexually abused her. During trial, the jury watched the recorded interview.

Following the forensic interview, the victim testified that her mother constantly pressured her to recant her statements. The victim's mother told her "a couple times a day" that she "ruined everything" and that her family "might lose the house." These statements made the victim feel "really upset and guilty" and she eventually recanted her original story. The victim's mother then notified Children and Youth of the recantation and drove the victim to the police station to recant. The victim testified that she recanted to "just make everything go away" and so her mother "wouldn't yell at [her] every day."

Shortly after the recantation, Appellant moved back into the home, which was in violation of a safety plan established by Children and Youth. When the police learned that Appellant had moved back into the home in violation of the safety plan, the victim was forced to move out of the house and live with her maternal grandparents.

In October of 2014, the victim met with Carol Quinlan and Officer Jessica Bloomingdale of the Warrington Township Police Department. During that meeting, the victim broke down and confirmed that her original statement was the truth. She admitted that her mother "made her lie about the incidents."

On May 30, 2014, police seized paper towels from the trash can in the guest bedroom in Appellant's home pursuant to a valid search warrant. Police also seized Appellant's iPad but found no pornography. In addition to the paper towels, the seized contents of the trash can included the following: a diagnostic report for a printer, dated April 2, 2014; a back page of a victim booklet from the Child Advocacy Center; discharge instructions from Abington Hospital in the name of the victim's mother, dated January 1, 2014; a printed online newspaper article, dated January 3, 2014; and a printed recipe for chicken, dated January 28, 2014. Despite the presence of documents spanning months, the victim's mother testified that she emptied the can on a weekly basis.

The paper towels seized from the trash can in the guest room were sent to Bode Technologies, a forensic sciences laboratory, for DNA analysis. Cassidy Torgrimson, a

3

forensic biology expert, testified that two of the paper towels tested positive for spermatozoa. Testing of one of the towels was indicative of saliva; however Bode Technologies did not have a confirmatory test for saliva. Vanessa Covert, a DNA analysis expert, testified that she tested the spermatozoa from the towels and that it matched Appellant's DNA profile. She also testified that the probability of selecting an unrelated individual with Appellant's DNA profile is one in 1.8 quintillion in the U.S. Caucasian population, one in 100 quintillion in the U.S. African-American population, and one in 18 quintillion in the U.S. Hispanic population.

At trial, Appellant offered the expert testimony of Arthur Young, a forensic biology specialist at Guardian Forensic Sciences. In his testimony, Young relied on the report provided by the practitioners at Bode Technologies. Young stated that his lab offered a confirmatory test for saliva; however, Appellant did not have Young retest the evidence.

During trial, the victim's mother testified on behalf of Appellant; she testified that she did not believe the victim. Appellant testified on his own behalf and denied the allegations.

Trial Ct. Op., August 16, 2016.

## II.    PROCEDURAL HISTORY

On October 23, 2015, Appellant was convicted of Involuntary Deviate Sexual Intercourse with a Child,[5] Aggravated Indecent Assault,[6] Indecent Assault,[7] and Corruption of Minors[8] following a jury trial. This Court sentenced Appellant to six to twelve years of imprisonment in a state correctional facility and a consecutive two years of probation on January 19, 2016. Appellant timely appealed and the Pennsylvania Superior Court affirmed this Court's judgment of sentence in its Opinion, dated March 31, 2017. The Pennsylvania Supreme Court denied Appellant's Petition for Allowance of Appeal on October 4, 2017.

Appellant filed a *pro se* Petition for Post-Conviction Relief on October 11, 2018. This Court appointed Appellant's PCRA counsel on November 1, 2018, and PCRA counsel filed an Amended Petition for Relief under the Post-Conviction Relief Act on January 3, 2019. The

---

[5] 18 Pa.C.S.A. § 3123(b).
[6] 18 Pa.C.S.A. § 3125(a)(7).
[7] 18 Pa.C.S.A. § 3126(a)(7).
[8] 18 Pa.C.S.A. § 6301(a)(1)(ii).

4

Commonwealth responded to Appellant's Amended Petition on January 24, 2019, and an evidentiary hearing was held on February 19, 2019. Following the hearing, PCRA counsel filed a Memorandum of Law in Support of Defendant's Amended Post-Conviction Relief Act Petition and the Commonwealth filed a Memorandum of Law in Opposition to the Amended Petition for Post-Conviction Relief. Upon consideration of the Memoranda of Law and the record in the case, this Court denied Appellant's Petition on June 4, 2019. On June 14, 2019, Appellant filed a timely Notice of Appeal from the denial of post-conviction relief to the Superior Court. .

## III. MATTERS COMPLAINED OF ON APPEAL

On June 19, 2019, this Court issued an Order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), directing Appellant to file a Concise Statement of Matters Complained of on Appeal. On June 21, 2019, Appellant filed such a Statement, which raised the following issue, *verbatim*:

1. The Trial Court erred in denying Defendant's Post-Conviction Relief Act petition as to the effectiveness of Trial Counsel who failed to properly prepare with character witnesses and to question such witnesses who were called on Defendant's behalf. These witnesses were available to specifically testify as to Defendant's character and reputation in the community not only for being truthful and law-abiding, but also the personality traits of being non-violent and of good moral character. The jury was thereby prevented from receiving a full picture of Defendant's reputation. Such lack of questioning was the result of unreasonable professional judgment because Trial Counsel did not know he could ask questions of the character witnesses regarding specific aspects of Defendant's reputation. Such evidence, specific to the type of crime that was charged, would have been invaluable to a jury that was faced with a credibility determination.

5

## IV. ANALYSIS

We find that Appellant is not eligible for the relief requested in his appeal from the denial of post-conviction relief because Appellant did not meet his burden of proving that trial counsel was ineffective. To be eligible for relief under the PCRA, Appellant must plead and prove by a preponderance of the evidence that the conviction or sentence resulted from ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa. C.S.A. § 9543(a)(2)(ii). To be entitled to relief on an ineffectiveness claim, Appellant must prove (1) that the underlying claim is of arguable merit, (2) that counsel's performance lacked a reasonable basis, and (3) that counsel's ineffectiveness caused him prejudice. *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001); *see also Commonwealth v. Solano*, 129 A.3d 1156, 1162 (Pa. 2015). Failure to establish any prong of the test will defeat an ineffectiveness claim. *Commonwealth v. Basemore*, 744 A.2d 717, 738 n. 23 (Pa. 2000) (citing *Commonwealth v. Rollins*, 738 A.2d 435, 441 (Pa. 1999) (ordinarily, post-conviction claim of ineffective assistance of counsel may be denied by showing petitioner's evidence fails to meet any one of three prongs for claim)).

The Pennsylvania Supreme Court has explained, "As a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error." *Commonwealth v. Gribble*, 863 A.2d 455, 472 (Pa. 2004). That is because prejudice in the context of ineffective assistance of counsel means demonstrating there is a reasonable probability that, but for counsel's error, the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 724 A.2d 326, 332 (Pa. 1999).

6

As a general rule, matters of trial strategy are left to the determination of counsel, and a defendant is not entitled to appellate relief simply because a chosen strategy is unsuccessful. *See Commonwealth v. Tippens,* 598 A.2d 553, 556 (Pa. Super. 1991) (en banc). "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Commonwealth v. Lee,* 585 A.2d 1084, 1089 (Pa. Super. 1991) (quoting *Strickland v. Washington,* 466 U.S. 668, 690–691 (1984)). Accordingly, "[b]efore a claim of ineffectiveness can be sustained, it must be determined that, in light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Miller,* 431 A.2d 233 (Pa. 1981). The Court should determine whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect the defendant's interests. *See Commonwealth v. Hill,* 301 A.2d 587 (Pa. 1973).

When evaluated pursuant to the above standards, Appellant's claim that trial counsel was ineffective by not properly preparing and questioning character witnesses at trial fails. To find that Appellant was denied effective representation of counsel, the Court must determine that the course chosen by Appellant's trial counsel was without a reasonable basis designed to effectuate Appellant's interests, keeping in mind that the burden is upon Appellant to demonstrate counsel's incompetence. *Commonwealth v. Murray,* 305 A.2d 33 (Pa. 1973).

Appellant contends trial counsel was ineffective for asking his character witnesses only about Appellant's reputation for law-abidingness and truthfulness. Appellant argues that trial

7

counsel should have asked the witnesses additional questions about his reputation for being non-violent and of good moral character.

Under Pennsylvania Rule of Evidence 404(a)(1), a "person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Pa.R.E. 404(a)(1). Under Rule 404(a)(2)(A), a criminal defendant may introduce evidence of a "pertinent" character trait. "Pertinent" means relevant to the crimes charged. *Commonwealth v. Minich*, 4 A.3d 1063, 1071 (Pa. Super. 2010). In rebuttal, the Commonwealth may offer evidence of the defendant's bad character. Pa.R.E. 404(a)(2)(A). Pennsylvania law generally limits proof of character evidence to a person's reputation, and opinion evidence cannot be used to prove character. Pa.R.E. 405(a).

Evidence of good character is substantial and positive evidence. *Commonwealth v. Harris*, 785 A.2d 998, 1000 (Pa. Super. 2001). The jury may conclude that a defendant had good character and, acting in conformity with that character, did not commit the offense charged. In *Commonwealth v. Tenbroeck*, the Pennsylvania Supreme Court stated, "A man of good standing is less likely to commit crime, and evidence of good reputation may of itself work an acquittal by creating a reasonable doubt of guilt where in the absence of such evidence there would be no reasonable doubt." *Commonwealth v. Tenbroeck*, 108 A. 635, 637 (Pa. 1919). Even if the Commonwealth's case is convincing, evidence of the defendant's good character may be sufficient to raise a reasonable doubt. *Commonwealth v. Smolko*, 666 A.2d 672, 679 (Pa. Super. 1995).

Here, trial counsel called eight character witnesses, including the Vice President of the Fraternal Order of Police in Philadelphia, a corporal for the Pennsylvania State Police, the Athletic Director for Neumann-Goretti High School, a crossing guard, a registered nurse, and two state troopers, to testify on Appellant's behalf. We note that the majority of the witnesses called by trial

8

counsel were involved in public service or in professions in which they would have contact with children. All eight of these witnesses testified that Appellant had a good reputation for being law-abiding and truthful. N.T. 10/23/15, pp. 321, 324, 326, 329, 331, 333, 336, 338. At the hearing on Appellant's Petition for Post-Conviction Relief, trial counsel explained that he did not ask additional questions regarding Appellant's reputation for non-violence and good moral character because he believed those traits were subsumed under law-abidingness.

> PCRA COUNSEL: As to the issue of character witnesses in this case – and you heard us go a little bit back and forth on the character witnesses – were you given – let's start with, did you ask Mr. McCreesh for a list of character witnesses?

> TRIAL COUNSEL: I did.

> PCRA COUNSEL: And what was your – what did you tell him about character witnesses and their use at trial?

> TRIAL COUNSEL: I told him that he had to go in that very awkward way evidence comes in. It's very awkward to lay people and I told him if he testified it would be for truthfulness and law abiding, he's a law abiding person. We had – I don't know – 12 to 15, I can't remember. Some of them were law enforcement, some not. A very good representation.

> PCRA COUNSEL: Okay. And you asked the witnesses during trial questions about my client's reputation in the community for truthfulness?

> TRIAL COUNSEL: And law abiding.

> PCRA COUNSEL: And being law abiding, right?

> TRIAL COUNSEL: Correct.

> PCRA COUNSEL: And that's all you asked them about; is that correct?

> TRIAL COUNSEL: That's correct.

> PCRA COUNSEL: Was that your understanding at the time of what character witnesses would be asked?

> TRIAL COUNSEL: Well, specifically for this case, yes, since he is being accused of a crime being law abiding, I think, covers that and the case of him testifying, him being truthful is the other piece.

9

PCRA COUNSEL: Did it ever occur to you – I don't want to put words into your mouth, but did – was part of your questioning of these witnesses as to whether they could testify as to Mr. McCreesh – we'll use the expression moral turpitude?

TRIAL COUNSEL: No. I thought law abiding would cover that. I did not think separately asking about moral turpitude.

N.T. 2/19/19, pp. 19-21. Although trial counsel "did not think" to question the character witnesses about Appellant's reputation for "moral turpitude," his decision to ask questions regarding Appellant's reputation for law-abidingness and truthfulness was grounded in reasonable professional judgment. Trial counsel was able to effectively place Appellant's good character in the record through his examination of the eight character witnesses. Any additional questioning would have been cumulative since Appellant's reputation for law-abidingness would tend to show his reputation for non-violence and for good moral character.

Based on the foregoing, we conclude that counsel was not ineffective for "[failing] to properly prepare with character witnesses and to question such witnesses who were called on [Appellant's] behalf." Not only did trial counsel present a reasonable basis for his decision in this context, but Appellant has failed to prove that the outcome of his case would have been different but for counsel's alleged ineffectiveness. As the Pennsylvania Supreme Court has held, "where it is clear that Appellant has failed to meet the prejudice prong [of his ineffective assistance of counsel claim], the claim may be disposed on that basis along, without a determination of whether the first two prongs have been met." *Commonwealth v. Wilson*, 672 A.2d 293, 298 (Pa. 1996), *cert. denied*, 519 U.S. 951 (1996) (citations omitted).

Although two of Appellant's eight character witnesses, Charles Steinmetz and Mark Dooling, have claimed that they would have testified that they were aware of Appellant's reputation for non-violence and good moral character in the community if asked at trial, Appellant

10

has not met his burden of proving that this additional testimony would have changed the jury's verdict. N.T. 2/19/19, pp. 110-111, 126. At trial, counsel presented Appellant's good reputation for law-abidingness and truthfulness through eight different witnesses, including Mr. Steinmetz and Mr. Dooling. It is uncontroverted that the witnesses called by trial counsel were appropriate. Further, we gave the following suggested standard instruction during our final charge so as not to limit the scope of the jury's consideration of Appellant's character testimony:

> Let me talk to you about character testimony for a moment. The defense offered evidence tending to prove that the defendant is a person of good character. I'm speaking of the defense witnesses who testified that the defendant was law-abiding and truthful. The law recognizes that a person of good character is not likely to commit a crime which is contrary to that person's nature. Evidence of good character may by itself raise a reasonable doubt of guilt and require a verdict of not guilty. You must weigh and consider the evidence of good character along with all the other evidence in the case. If on all the evidence you have a reasonable doubt of the defendant's guilt, you must find him not guilty. If on all the evidence you're satisfied beyond a reasonable doubt that the defendant is guilty, you must find him guilty.

N.T. 10/23/15, pp. 417-418. The evidence of Appellant's good reputation presented at trial, combined with the above instruction, would have compelled the jury to return a verdict of not guilty if character testimony was, in fact, the factor that was going to create a reasonable doubt in the minds of the members of the jury.

Counsel made a reasonable decision about how to defend the case after assessing the likelihood of success of presenting Appellant's character for law-abidingness and truthfulness. In addition, Appellant did not meet his burden of proving how the outcome of his case would be different but for trial counsel's alleged ineffectiveness in his examination of the eight character witnesses. Since Appellant failed to show how trial counsel's alleged ineffectiveness caused him prejudice, his claim on appeal fails.

11

## V. CONCLUSION

For the foregoing reasons, we respectfully submit that Appellant's arguments are without merit and his appeal should be denied.

DATE:

July 10, 2019

BY THE COURT:

REA B. BOYLAN, J.